WILLIAM B. GRISE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

CHARLES C. ALLEN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 3324, 3367. Promulgated April 6, 1927.

Under a contract a taxpayer becomes a partner in a business and agrees to pay for his interest out of his share of partnership earnings and gives his note therefor to the other partners: *Held*, the amounts credited by the partnership to him and applied directly on the note are taxable income for the years in which they are so credited and applied.

*R. C. Alderson, Esq.*, for the petitioners.
*L. C. Mitchell, Esq*, for the respondent.

Deficiencies as to Grise of $603.97 for 1919, $73.53 for 1920, and $68.39 for 1921; and as to Allen of $76.67 for 1919, $575.13 for 1920, and $322.50 for 1921, arising from the respondent's increase of each petitioner's income from a partnership. The facts are taken from the admissions in the pleadings and a stipulation offered at the trial. No other evidence was offered.

FINDINGS OF FACT.

Petitioners in the years in question were physicians in Austin, Minn.

On March 23, 1918, petitioner Grise entered into the following written contract with Lewis and Rebman:

THIS AGREEMENT made and entered into this 23d day of March, 1918, by and between C. F. Lewis, E. C. Rebman and W. B. Grise,

WITNESSETH, That each of the parties hereto, for and in consideration of the agreements of the other parties hereto, and each of them, agrees as follows:

FIRST. The parties hereto hereby associate themselves together, for the purpose of practising medicine and surgery, at Austin, Minnesota, under the name of Lewis, Rebman & Grise. The partnership shall begin April 1, 1918, and

shall continue until the $12,000.00 hereinafter referred to, has been paid out of the profits of the business above $200.00 per month; and thereafter for an indefinite period.

SECOND. The personal property owned by each of the three parties and by Lewis & Rebman as a copartnership, excepting book accounts, and the whole thereof, shall be inventoried at its present fair cash value, and each shall receive credit upon the books, for the amount of personal property so transferred and inventoried; and of that which belongs to Lewis & Rebman, said C. F. Lewis shall receive credit for one-half, and E. C. Rebman for one-half. Thereafter all of said personal property shall belong to the copartnership, and the interest of each therein shall be one-third.

THIRD. After April 1, 1918, each of the parties hereto shall give his whole time to the best interests of the partnership, in general in the same manner as has heretofore been done by the said Lewis and the said Rebman, while they were copartners under the name of Lewis & Rebman. Each copartner shall be entitled to a vacation of three weeks in each calendar year.

FOURTH. Each copartner shall furnish his own automobile, for the use of himself in the firm business; but shall be credited for the use thereof, fifteen cents per mile, for each mile which said automobile is used for firm business, outside of the City of Austin, and the amount thereof shall be credited to each upon the books daily.

FIFTH. A set of books shall be kept showing the business done by the partnership and including income and expenses. All moneys collected shall be paid into the partnership account. From said account, after paying the current expenses, including the automobile hire as hereinbefore provided, there shall be withdrawn by the said W. B. Grise, the sum of $200.00 per month. Thereafter, the said C. F. Lewis and the said E. C. Rebman shall each draw out sufficient to make $200.00 per month; the residue shall be drawn out by the said Lewis and Rebman, whenever it amounts to $150.00 or a multiple thereof; and of such $150.00, $75.00 shall be drawn by said Lewis and $75.00 by said Rebman; but $50.00 shall be charged to Lewis, $50.00 to Rebman, and $50.00 to Grise; and the $50.00 charged to Grise shall be credited upon his note hereinafter referred to.

SIXTH. Said Grise pays to said Lewis & Rebman the sum of $12,000.00, for one-third interest in the business, in addition to the provision hereinbefore provided for the appraisement of personal property. Said $12,000.00 shall be represented by a promissory note dated April 1, 1918, drawing interest at the rate of six per cent per annum, payable annually, "payable out of the profits of the business of Lewis, Rebman & Grise, in the manner provided by a contract dated March — 1918." At the option of Lewis and Rebman, the indebtedness of $12,000.00 may be represented by several notes, but in an amount of $50.00 or a multiple thereof, and all payable in the same way. Said note shall be paid by having applied upon it the profits of the business accuring to said Grise, above the expenses of the business and the $200.00 per month which he is permitted hereby to withdraw; and said obligation of $12,000.00 shall not be a personal obligation upon him, in any other manner excepting from the proceeds of the said business,

SEVENTH. In case of difficulty in making the appraisement of personal property hereinbefore provided, an outside appraiser may be employed, and his appraisement shall be final. In case of any dispute among the parties hereto as to the meaning of any of the terms hereof or the method of carrying it out, and such dispute cannot be setted between the parties hereto, it may be settled by arbitration, each party selecting one arbitrator, and the cost of arbitration shall be paid by the partnership.

In compliance with this contract said Grise executed two promissory notes dated April 1, 1918, each for $6,000 with interest at 6 per cent, and each payable to "C. F. Lewis and E. C. Rebman," and each bearing on its face the statement, " Payable out of the profits of the business of Lewis, Rebman & Grise, in the manner provided by a contract between them, dated March 23, 1918." One note has written across one end of its face the initials C. F. L., and the other, the initials E. C. R. The following endorsements appear on the back of the two notes respectively :

| (Note bearing initials C. F. L.) | (Note bearing initials E. C. R.) |
|---|---|

| 1918 | | | 1918 | | |
|---|---|---|---|---|---|
| June 20 cr_____ | $100. 00 | | June 20 cr_____ | $100. 00 | |
| July 19 " _____ | 75. 00 | | July 19 " _____ | 75. 00 | |
| Aug. 3 " _____ | 75. 00 | | Aug. 3 " _____ | 75. 00 | |
| " 15 " _____ | 100. 00 | | " 15 " _____ | 100. 00 | |
| " 23 " _____ | 75. | | " 23 " _____ | 75. | |
| Sept. 10 " _____ | 100. | | Sept. 10 " _____ | 100. | |
| " 17 " _____ | 75. | | " 17 " _____ | 75. | |
| Oct. 2 " _____ | 100. | | Oct. 2 " _____ | 100. | |
| " 11 " _____ | 200. | | " 11 " _____ | 200. | |
| Nov. 9 " _____ | 100. | | Nov. 9 " _____ | 100. | |
| " 14 " _____ | 150. | | " 14 " _____ | 150. | |
| Dec. 12 " _____ | 350. | 1, 500. 00 | Dec. 12 " _____ | 350. | $1, 500. 00 |
| Jan. 16 " _____ | 400. | 1, 900. | Jan. 16 " _____ | 400. | 1, 900. 00 |
| " 30 " _____ | 300. | 2, 200. | " 30 " _____ | 300. | 2, 200. |
| Mar. 3 " _____ | 500. | 2, 700. | Mar. 3 " _____ | 500. | 2, 700. |
| Interest paid to April 1st, 1919_____ | | $307. 98 | Interest paid to April 1st, 1919_____ | | $307. 98 |
| April 2 credit___ | 152. 55 | | April 2 credit___ | 152. 55 | |
| May 2 " ___ | 176. 50 | | May 2 " ___ | 176. 50 | |
| May 13 " ___ | 225. 00 | | May 13 " ___ | 225. 00 | |
| " 19 " ___ | 100. 00 | | " 19 " ___ | 100. 00 | |
| June 20 " ___ | 75. 00 | | June 20 " ___ | 75. 00 | |
| July 7 " ___ | 100. 00 | | July 7 " ___ | 100. 00 | |
| July 28 " ___ | 100. 00 | | July 28 " ___ | 100. 00 | |
| Aug. 5 " ___ | 250. 00 | | Aug. 5 " ___ | 250. 00 | |
| Aug. 26 " ___ | 100. 00 | | Aug. 26 " ___ | 100. 00 | |
| Sept. 12 " ___ | 179. 63 | | Sept. 12 " ___ | 179. 62 | |
| Oct. 9 " ___ | 150. 00 | | Oct. 9 " ___ | 150. 00 | |
| Nov. 4 " ___ | 200. 00 | | Nov. 4 " ___ | 200. 00 | |
| Nov. 15 " ___ | 181. 62 | | " 15 " ___ | 181. 62 | |
| | 4, 690. 30 | | | 4, 690. 29 | |
| $6, 000. 00 | | | $6, 000. 00 | | |
| 4, 690. 30 | | | 4, 690. 29 | | |

1, 309. 70 balance due on this. | 1, 309. 71 balance due on this note.

With both notes is an additional slip of paper showing the following:

| | | | | |
|---|---|---|---|---|
| Total amt. due | | | | $2619. 41 |

| | | | | |
|---|---|---|---|---|
| Nov. | 4 credit | (⅓ Dr. A. payment) | | 133. 34 |
| Dec. | 6    " | (from Clinic) | | 500. 00 |
| | 6    " | ( " L. R. G.) | | 476. 67 |
| 1920 | | | | |
| Jan. | 8    " | ( " L. R. G.) | | 300. 00 |
| | 8    " | ( " Clinic) | | 300. 00 |
| Jan. | 26    " | ( " L. R. G.) | | 300. 00 |
| | 26    " | ( " Clinic) | | 300. 00 |
| Feb. | 19    " | | | 507. 43 |
| | 309. 40 Principal. | | | |
| | 108. 03 Interest. | | | |
| | 507. 43. | | | |

Thereafter, until March 20, 1919, Lewis, Rebman, and Grise associated themselves in the practice of medicine and surgery in compliance with the terms of the contract of March 23, 1918.

On March 20, 1919, the following contract was entered into by Lewis, Rebman, Grise, and petitioner Allen:

THIS AGREEMENT made and entered into this 20th day of March, 1919, by and between Charles F. Lewis, E. C. Rebman, Charles C. Allen and W. B. Grise.

WITNESSETH that each of the parties hereto for and in consideration of the agreements of the other parties and each of them agrees as follows:

FIRST: The parties hereto hereby associate themselves together for the purpose of practicing medicine and surgery and of conducting a Clinic at Austin, Minnesota. The name of said partnership shall be "Austin Clinic." Said partnership shall continue for five years at which time it shall continue for succeeding periods of five years each unless more than thirty days previous to the termination of a five year period one or more of said partners shall in writing notify each of the other members of said partnership that upon the expiration of the then existing five year period he withdraws from and terminates said partnership.

SECOND: The existing partnership of Lewis, Rebman and Grise is hereby dissolved and terminated from and after March 19, 1919, except for the purpose of making payment in full of a certain note of said Grise to said Lewis and Rebman as provided in the articles of Partnership of Lewis, Rebman and Grise.

THIRD: The personal property owned by each of the four parties: by Lewis and Rebman and by Lewis, Rebman and Grise as a co-partnership, excepting book accounts of Lewis and Rebman, and Lewis, Rebman and Grise and the whole thereof shall be inventoried at its present fair cash value and each shall receive credit upon the books for the amount of personal property so transferred and inventoried. Of that belonging to Lewis and Rebman, said Lewis shall receive credit for one half and said Rebman shall receive credit for one half: of that belonging to Lewis, Rebman and Grise, said Lewis shall receive credit for one third, Rebman one third and Grise one third. Hereafter all of said personal property shall belong to the co-partnership and the interest of each therein shall be one fourth.

FOURTH: All outstanding Lewis and Collins, Lewis and Rebman, and Lewis, Rebman and Grise accounts shall be received in the office of the firm and the bookkeeper shall credit them to the respective parties in accordance with the articles of partnership under which said accounts were earned.

FIFTH: After March 20, 1919 each of said parties hereto shall give his whole time to the best interest of said partnership in general in the same manner as has been heretofore done by the said Lewis, Rebman and Grise while co-partners as Lewis, Rebman and Grise. Each co-partner shall be entitled to a vacation of one month in each calendar year the time of said vacations to be chosen with regard to seniority in said partnership.

SIXTH: Each partner shall furnish his own automobile for the use of himself in the firm business. He shall be credited for the use thereof 15 cents per mile for each and every mile which said automobile is used in firm business outside of the city of Austin and the amount thereof shall be credited to each upon the books at the close of each business day.

SEVENTH: The first business day of said partnership shall be closed at 3:30 P.M. March 21, 1919 and each succeeding business day at the same hour, thereafter. The bookkeeper each Monday morning shall prepare a typewritten statement of the firms' business for the preceding week ending with the close of the business day on the preceding Saturday. The books of said partnership shall be closed on the twentieth and the balance sheet shall be completed on the twenty-second of each and every month at which time all the members of the partnership shall meet to discuss any matters arising in connection with said partnership. All cash received by each of said partners during the day as shown by his daily service shall be turned into the bookkeeper in one sum at the close of each business day. All checks of said partnership shall be signed by at least two members thereof.

EIGHTH: A set of books shall be kept showing the business done by the partnership including income and expenses. All money collected shall be paid into the partnership account. From said account shall be paid on the twentieth day of each month:

1—Current expenses of said partnership.

2—Automobile expenses as herein provided.

3—Three hundred dollars each to said Lewis, Rebman, Allen and Grise.

4—The remainder and residue of said account shall be considered as the net profits of said partnership, and shall be divided as follows:

a—Until the notes of said W. B. Grise and Charles C. Allen are paid, said Lewis and Rebman may draw therefrom the sum of $200 which shall be divided equally between them. This shall be charged as follows:

$50 each to Lewis and Rebman.

$50 to Grise. This shall be credited upon the note of said Grise to said Lewis and Rebman.

$50 to Allen. This shall be credited upon the note of said Allen hereafter referred to.

b—After the note of W. B. Grise has been paid but before the note of Charles C. Allen has been paid, said Lewis, Rebman and Grise may draw therefrom the sum of $200 of which each shall receive one third. This shall be charged as follows:

$50 each to Lewis, Rebman and Grise.

$50 to said Allen. This to be credited upon the note of said Allen hereafter referred to.

c—After the notes of said Grise and Allen have been paid in full whenever the profits of said partnership shall amount to $200 or any multiple thereof

said partners and each of them shall receive one-fourth of said profits and be charged with one fourth of all sums so received.

NINTH: Said Charles C. Allen pays to said Lewis, Rebman and Grise the sum of $12,000 for a one fourth interest in the business in addition to the provision heretofore provided for the appraisement of personal property. Said $12,000 shall be represented by a promissory note dated March 20th, 1919, due in five years drawing interest at 6% per annum payable annually, payable out of profits of the business of the Austin Clinic in the manner heretofore referred to. Said note shall be paid by having the profits of the business accruing to said Allen applied upon it as provided for by paragraph eight. Said obligation shall not be a personal obligation upon said Charles C. Allen, his heirs, representative or assigns in any other manner than from the proceeds of said business. As further consideration for said one fourth interest said Charles C. Allen agrees to give up his private practice of medicine and surgery and relinquish his private office.

TENTH: In case of difficulty in making the appraisement of personal property hereinbefore provided, an outside appraiser may be employed, and his appraisement shall be final. In case of any dispute among the parties hereto as to the meaning of any of the terms hereof or the method of carrying it out, and such dispute can not be settled between the parties hereto, it may be settled by arbitration, each party selecting one arbitrator and these shall then in turn select a fifth. The cost of such arbitration shall be paid by the partnership.

Thereafter, through the remainder of 1919 and through the year 1920 said Lewis, Rebman, Grise and Allen associated themselves in the practice of medicine and surgery in compliance with the terms of the contract of March 20, 1919.

During 1919 Grise received from said two partnerships $200 per month and in 1920, $300 per month as provided in said two contracts, and in addition thereto received credit on his two notes aforesaid of $7,357.27 in 1919 and $1,700 in 1920. These amounts represented the portion of the net profits of the partnerships, in addition to the drawing accounts received by him, accruing to the interest of Grise in said partnerships under the two contracts. The Commissioner included these amounts in Grise's income.

During 1919, 1920, and 1921, Allen received from the partnership $300 per month, as provided in the contract of March 20, 1919, and in addition thereto received credit on his note aforesaid of $900 in 1919, $6,047.94 in 1920, and $4,500 in 1921. These amounts represented the portion of the net profits of the partnership, in addition to the drawing account received by him accruing to the interest of Allen in said partnership under the said contract. The Commissioner included these amounts in Allen's net income.

OPINION.

STERNHAGEN: The petitioners contend that the effect of the contract and its performance is merely to give them the prescribed drawing account, and that this amount alone is income to each of them until under the contract the notes of $12,000 are discharged;

that since in fact they did not receive any amounts in excess of the drawing accounts, no such amounts may be taxed as their income. But this is a disregard of the contracts and the acts of the parties to them in their performance. Grise in 1918 bought an interest in the partnership for $12,000 and agreed to pay for such interest out of his share of the partnership income. For this he gave his notes and, instead of taking his full distributable share in cash and therewith periodically discharging his notes, he by the contract authorized the partnership to apply part of his share on the notes. At the end of the year he had enjoyed income by the amount of such credits, had acquired *pro tanto* an unincumbered interest in the partnership, and to this extent was richer at the end of the year than at the beginning. The fact that he received credit on his notes instead of actual cash makes it no less income.

It may be, as petitioners contend, and we do not decide, that if the partners had agreed that Grise should have a distributable share of $200 a month and Lewis and Rebman an equal distribution of the remainder until they had received $12,000 more than he, whereafter the distribution should be one-third to each, his taxable income up to that time would have been only $2,400. But the contract before us expressly provides otherwise, giving him at once a one-third interest in the proceeds and applying part thereof as purchase price. That the subsequent use of income does not affect its taxability is settled.

The situation is legally similar as to Allen, and as to both, the respondent is sustained.

> *Judgment will be entered on 20 days' notice, under Rule 50.*